703 So.2d 1358 (1997)
STATE of Louisiana
v.
Brian CAMPBELL.
No. 97-KA-369.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1997.
*1359 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, 40th Judicial District, St. John the Baptist Parish, Laplace, for plaintiff-appellee.
Laurie A. White, New Orleans, for appellant-defendant.
Before GAUDIN, GOTHARD and BOWES, JJ.
GAUDIN, Judge.
Appellant Brian Campbell was convicted by a jury in St. John the Baptist Parish of possession of stolen things valued at less than $500.00 but more than $100.00, LSA-R.S. 14:69. He was sentenced as a second time felony offender to three years at hard labor with credit for time served. We affirm his conviction and remand for resentencing.
On appeal, Campbell asks this Court to search for errors patent and he assigns these district court errors:
(1) his counsel was ineffective,
(2) he was wrongly denied a continuance when the case was called for trial on October 9, 1995,
(3) the verdict form was invalid, and
(4) the guilty plea taken at the habitual offender hearing was flawed.
On March 10, 1995, pursuant to a tip from a confidential informant relating to an armed robbery, several detectives, carrying a fugitive warrant, went to 246 Joe Parquet Circle in Laplace, Louisiana. Upon arriving at approximately 9:30 a.m., Detective Wayne Schaffer knocked on the door. The lessee of the apartment, Ms. Letasha McGee, answered the door. Detective Schaffer asked if Campbell was present. Ms. McGee stated that he was and let the officers into the apartment. Campbell, who had been sleeping in the bedroom, was arrested on the outstanding warrant.
Detective Schaffer then asked Ms. McGee if he could search the apartment. Ms. McGee signed a consent to search form, and the officers proceeded to search. The officers found a black mink coat with initials embroidered inside, an Emerson VCR, a Pentax 35 mm. camera, a Mondaine watch, a Sony telephone, a television set, 2 boxes of ammunition and one pistol magazine. Campbell told Detective Schaffer that he had purchased these items from an unknown black male at the Laplace Project for $20.00.
At trial Mrs. Irma Stilson testified that she had lived with her husband at 2204 Van Arpel Street in Laplace, a house leased from *1360 the defendant's parents. She testified that on February 24, 1995, her house was burglarized without any sign of forced entry. The missing items included a mink coat, two VCRs, a CD player, speakers, remotes, jewelry, a Pentex camera, a Mondaine watch, a Sony cordless phone, ammunition and four guns. Mrs. Stilson identified the items in evidence in this case as the same items taken from her home.
On July 10, 1995, Ms. McGee gave a statement to Detective Schaffer that the items were in fact hers, and that she had purchased them from an unknown black male in the projects for $100.00. Ms. McGee testified that although on March 10, 1995, she had told the police that the items in the house belonged to the defendant, in fact the items were hers. She testified that she lied to the police because she was afraid that she would lose her children. Ms. McGee said that she bought the items from a man passing down the street in a white truck. She stated that she did not know the items had been stolen.
Campbell does not now directly argue that his conviction was based on insufficient evidence; instead, he assigned the four errors previously stated.

ASSIGNMENT NO. 1
In contending that he was given ineffective assistance of counsel, Campbell states that his lawyer erred by (1) not withdrawing from representation of the defendant in spite of a conflict of interest, (2) failing to object to testimony regarding Campbell's post arrest silence, (3) failing to object to other crimes evidence and (4) failing to object to a prejudicial characterization of Campbell during the prosecutor's closing argument.
Normally, a claim of ineffective assistance of counsel is addressed through an application for post conviction relief rather than direct appeal. The trial court could then create an adequate record for review. See State v. Truitt, 500 So.2d 355 (La.1987); and State v. Pendelton, 696 So.2d 144 (La. App. 5 Cir.1997). If, however, the record contains sufficient evidence to decide the issue, an appellate court can consider this allegation in the interest of judicial economy. See State v. Peart, 621 So.2d 780 (La. 1993). Because the record here is adequate for this purpose, we will consider Campbell's accusations.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The defendant must show (1) that his counsel's performance was deficient and (2) that the dereliction prejudiced him. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial. Effective assistance of counsel doesn't mean errorless counsel or counsel who may be judged ineffective on mere hindsight. The defendant must establish that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different.
Our careful examination of this record did not reveal any serious conflict of interest concerning Campbell's trial counsel; in fact, Campbell went on record saying that he saw no prejudicial conflict of interest although he (Campbell) had been implicated in an armed robbery of trial counsel's half brother. Nonetheless, Campbell now argues that his attorney should have voluntarily withdrawn.
The Louisiana State Bar Association Rules of Professional Conduct, Rule 1.7 states that:
"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interests, unless;
"(1) The lawyer reasonably believes that the representation will not be adversely affected; and
"(2) The client consents after consultation..."
Both conditions were satisfied. Campbell's trial counsel saw no problem and Campbell authorized him to proceed.
Likewise, there was no meaningful error in the alleged three-time failure to object by defense counsel. The information submitted to the jury as a result of the alleged failures to object was not so prejudicial as to have contributed to the guilty verdict.
*1361 The first instance of failure to object occurred during the state's questioning of Ms. McGee, as follows:
"Q(to Ms. McGee)Do you know whether or not Brian (the defendant) told the police, `I didn't do it, my girlfriend did?'
"ANot to my knowledge.
"QEven though he was in jail from March 10th until July?
"ANot to my knowledge."
After Campbell's arrest, neither he nor Ms. McGee was silent. Campbell gave a statement regarding the items found in the apartment while Ms. McGee gave two conflicting versions, including her straightforward testimony at trial that the seized items were purchased by her.
In any event, a brief reference to post arrest silence does not mandate either a mistrial or reversal where the trial as a whole was fairly conducted, where the proof of guilt is strong and where the prosecution made no use of the silence for impeachment purposes. See State v. Troulliet, 643 So.2d 1267 (La. App. 5 Cir.1994). All of these factors were present in Campbell's trial.
The second alleged failure to object also took place during Ms. McGee's testimony. She was asked by the prosecutor: "During your interview with Detective Farlough on March 10th, do you recall telling Detective Farlough that Brian smokes weed?" This was, Campbell now argues, inadmissible evidence of another crime and should have been objected to.
Ms. McGee said that Campbell smoked weed "sometimes" but that he would not have purchased a woman's coat at a discounted price with the idea of reselling it "to get money" to purchase weed. All of the items seized in the apartment were hers, she said, not Campbell's.
In the opening statement Campbell's trial counsel made to the jury, he said that Campbell was originally investigated for armed robbery, attempted armed robbery, possession of stolen things, aggravated burglary and possession of drug paraphernalia. Campbell's present attorney, in his brief to this Court, says that Campbell's trial theory "... appeared to be that the police were after Mr. Campbell for anything but they could only charge him with one count of possession of stolen things."
There was testimony about other possible crimes not only from Ms. McGee but also from Campbell's mother, Beulah, called as a defense witness, who explained that her son Brian had been exonerated of burglary of the Van Arpel home on a prior occasion because he was in jail.
Overall, the questioning by Campbell's trial counsel tried to show that while Campbell may have been a suspect for other crimes, he did not commit any crime, including the one he was convicted of.
Apparently the jury did not believe Ms. McGee's testimony about who had purchased the stolen items. Therein lies the basic reason for Campbell's conviction.
Campbell did not testify except to tell the trial judge (1) that he was willingly and knowingly waiving his right to take the witness stand and (2) that he was satisfied with the way he had been represented at trial.
We cannot say that Campbell's representation was so ineffective that a reversal is mandated. To the contrary, Campbell's trial lawyer appeared to have done well with what he was confronted with.
The third failure to object instance occurred during the prosecutor's closing argument when he said:
"Criminals commit crimes. The Sheriff's office may have been investigating other matters and stumbled upon something. Were they surprised? No. They bring evidence custodian Harry Troxlair. They might be looking for an armed robber but robbery involves a theft. Burglary involves a theft. Receiving stolen things involves a theft and Mr. Campbell is a convicted burglar."
Generally, a prosecuting attorney has considerable latitude in making closing arguments. See State v. Byrne, 483 So.2d 564 (La.1986), cert. denied at 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).
Here, Campbell makes no showing that the prosecutor's remarks either influenced the *1362 jury or contributed to the guilty finding. We see no reversible error.

ASSIGNMENT NO. 2
This assignment of error relates to the district judge's failure to postpone the trial date from October 9, 1995. On that day, several pretrial motions were heard and disposed of. Defense counsel then moved for a continuance so that he could obtain a transcript of the pretrial proceedings. This request was denied.
A trial judge has wide discretion in ruling on a motion to continue. Campbell's trial counsel had advised the court earlier on October 9th, before the pretrial hearings, that he was ready for trial; in fact, he had previously moved for a speedy trial.
Regardless, there is no indication of specific prejudice, a requisite before a conviction can be reversed because of a denial of a motion for continuance. See State v. Strickland, 683 So.2d 218 (La.1996).

ASSIGNMENT NO. 3
This assignment of error concerns the form used by the jury in expressing its verdict. The first part of the form is entitled "Responsive Verdict," and it lists four possible verdicts. Here, the foreman placed a check mark by the space indicating that the defendant has been found guilty of possession of stolen property valued under $500.00 but under $100.00. Lower down in the form, there is a space for the foreman to write in the actual verdict, i.e., guilty or not guilty. Instead of properly responding, the foreman wrote in Campbell's name.
Campbell contends that the form was on its face invalid and that he should be given a new trial.
LSA-C.Cr.P. art 810 states:
"When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury."
The verdict should be expressed in plain and intelligible words so that its meaning may be understood readily by the court in giving judgment thereon. The verdict should be sufficiently definite, certain, and specific to identify the crime. Where the verdict is so indefinite and uncertain as to be unintelligible, it is invalid. However, a strict adherence to the statutory form of verdict usually is not required; and although the verdict is informal or contains inaccuracies in the language used, if the intention of the jury to return a verdict of guilty or not guilty of the offense charged may be understood readily, it is sufficient; any words which convey beyond a reasonable doubt the meaning and intention of the jury are sufficient. A verdict will not be voided for uncertainty if its meaning can be determined by reference to the record. See State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950), cited in State v. Knight, 526 So.2d 452 (La.App. 5 Cir.1988).
The verdict form in this case clearly articulates the intention of the jury to return a verdict of guilty of possession of stolen property, value under $500.00 and over $100.00. A polling of the jury verified this verdict.

ASSIGNMENT NO. 4
Campbell contends that the trial court accepted an invalid guilty plea at the habitual offender hearing.
The record does not show that Campbell knowingly and intelligently waived constitutional rights; also, the record does not contain a bill of information charging Campbell with being a multiple offender.
We remand for a new multiple offender hearing; otherwise, Campbell's conviction is affirmed.
CONVICTION AFFIRMED, REMANDED FOR RESENTENCING.